This is an action for the recovery of $405.25, being the value of certain lumber belonging to the plaintiff which was lost, as the plaintiff alleges, while in the possession of and through the negligence of the defendant.
The plaintiff was engaged in the lumber business and maintained a sawmill near the city of Wilmington. On 9 October, 1916, the plaintiff had forty-nine thousand feet of lumber placed on the wharf of the Camp Manufacturing Company on the Cape Fear River, which had been sold and consigned to R. R. Sizer Co. of New York, and which the plaintiff intended to ship by the Clyde Line Steamer Company to its destination. With this intention he notified the defendant, who was engaged in the business of towing lumber and other materials to and from various points on the river with boats owned and operated by the defendant for hire, that he had the lumber previously mentioned loaded on the lighters at the Camp Manufacturing Company and that he desired the defendant to deliver the same to the Clyde Line Steamship Company, to be loaded upon one of their vessels, and this the defendant agreed to do for a stipulated sum.
There is a dispute between the parties as to the time of delivery to the Clyde line, plaintiff alleging that it was not to be delivered until 7 o'clock or some time thereafter during the day following the day upon which the agreement to haul the lumber was made, while the defendant contends that there was no agreement whatever as to when the lumber should be delivered to the Clyde (293) line.
The defendant took charge of the lighter loaded with lumber on the wharf of the Camp Manufacturing Company about 5 o'clock in the afternoon of the day the agreement between the plaintiff and defendant was made, and the defendant towed the lighter to dock of the Clyde Line Steamship Company and tied the same to the dock and left it there. The lighter was left unguarded during the night and about 5 or 6 o'clock the following morning it was swung up under the dock, and turned partially over and dumped its load of lumber into the river. A part of the lumber was recovered, and this suit is brought to recover the value of the lumber which was lost, the value being based upon the price for which the plaintiff had contracted to sell the same. *Page 314 
There are two theories upon which the plaintiff is resting his right to recover. The first is, that the defendant, in undertaking to deliver the plaintiff's Lumber to the Clyde Line Steamship Company, did so in the capacity of a common carrier, and was therefore an insurer of the goods so that it would only be necessary for the plaintiff to show the delivery of the lumber to the defendant and its subsequent loss before the defendant had made the delivery to the Clyde Line Steamship Company, under what the plaintiff alleges were the terms of the contract, in order to make out aprima facie case and shift the burden upon the defendant to disprove its negligence. The second theory was that if the defendant was not acting as a common carrier he was guilty of negligence in the manner in which the lighter was moored to the dock of the steamship company, and in failing to notify some of the agents of the steamship company that the lighter was moored to the dock and in leaving the lighter unguarded during the night, and that one or the other or all of these acts of negligence was the proximate cause of the loss of the lumber.
The principal differences between the plaintiff and defendant on the first position of the plaintiff was as to the terms of the contract, the defendant contending his liability ceased when he delivered the lumber at the dock of the Clyde line.
The place of delivery was subject to the tides.
During the trial the plaintiff introduced Frank Sears, who had expert knowledge, and asked him the following questions:
Q. Are you able to form an opinion satisfactory to yourself as to the reason that this lighter was washed up under the wharf by the tide and dumped its load into the river? A. Yes, sir.
The defendant objected. Objection sustained. Plaintiff excepted.
(The witness would have testified that the lighter dumped its load because it was improperly tied.)
Q. What business were you engaged in at this time? (294) A. Lumber business.
Q. Were you employed at Chadbourn's mill? A. Yes, sir.
Q. How long have you been engaged in that business? A. About seventeen years.
Q. While you were engaged in the lumber business and employed by Mr. Chadbourn was it part of your duty to handle lighters and load them? A. Yes, sir; I supervised it.
Q. Did you have occasion to take lighters after the same were loaded, or supervise the loading, down to the Clyde Line wharf and other wharves and tie them there? A. Yes, sir.
Q. State whether or not, in your opinion, if this lighter had been *Page 315 
properly tied to the wharf it would have dumped its load as you have just described this lighter did.
Defendant objects. Objection sustained. Plaintiff excepted.
(Witness would have testified that it would not.)
Q. Mr. Sears, in your opinion, could that lighter have been tied to the wharf on the evening before it was sunk in such a manner that it would not have been swept under the sill the following morning, as you have testified it was, and dumped its load into the river?
Objection by defendant. Sustained. Plaintiff excepted.
(Witness would have answered yes, sir.
It could have been moored so that both ends of the lighter could come up to the guard piling, then it would have been impossible for it to have gotten under the sill. This lighter was not tied in that way.)
A witness for the defendant, one Register, was asked the following questions:
Q. State if you know whether, at or about the time we are speaking of, a great many lighters of lumber were being carried to and handled at the Clyde dock?
Objection by plaintiff. Overruled. Exception.
A. Yes, sir; great many are handled around there and some shifted by the Clyde people at different times at night. I have known them to turn lighters and barges adrift and have picked them up in the river.
Q. Do you know as a fact that it frequently occurred, at or about this time we are speaking of, that lighters which were moored to the Clyde Line docks were changed in their position or their lines interfered with?
Objection by plaintiff. Overruled. Exception.
A. Yes, sir.
The plaintiff excepted to the refusal to give the following instructions:
"The court charges you that if you find from the evidence, and by its greater weight, that at the time set out in the complaint the defendant was engaged in the business of towing lighters, hauling freight, passengers or material for hire, to and from (295) various points on the Cape Fear River, and that in the scope of such business carried on by the defendant the defendant contracted to tow the lighter loaded with lumber belonging to the plaintiff from the wharf of the Camp Manufacturing Company, and contracted to deliver the same to the Clyde Line Steamship Company, and should further find that in pursuance of such contract the defendant, through its agent and employees, took charge of said lighter, *Page 316 
with the lumber of the plaintiff loaded thereon, for the purpose of delivering the said lumber of the plaintiff to the Clyde Line Steamship Company, and set out to tow the said lighter loaded with lumber to the Clyde Line Steamship Company, and the jury should further find that the said lumber, or part of the same, was lost from aboard the lighter, and that the said lumber was lost, and after the defendant had taken charge of the same and set out to deliver the same to the Clyde Line Steamship Company, then the court charges you that the defendant will be responsible for the safe delivery of the lumber to the Clyde Steamship Company, according to his contract with Bryant; and that it is not necessary for the plaintiff to show or prove any specific act of negligence by the defendant by which the said lumber was lost, but the burden of proof would be upon the defendant to show that he was not negligent in transporting the said lumber upon the lighter and delivering the same to the Clyde Line Steamship Company. And the burden of proof will be upon the defendant to show that the loss of the lumber, if the jury should find that any of the lumber was lost, was not due to any negligence on the part of the defendant, as shown by the plaintiff's twentieth exception."
His Honor charged the jury on the first issue as follows:
"Upon that issue the burden rests with the plaintiff to satisfy you of that by the greater weight of the evidence. If you find as a fact from this evidence, and you are satisfied by its greater weight that the defendant was engaged in the business of a common carrier at the time, and in the capacity of a common carrier as such undertook to transport and deliver these goods to the Clyde Line Steamship Company, why it would be your duty to answer the first issue `Yes.' On the other hand, if you should find that the relation between the parties at the time was that of employer and employee for the purpose of towing the barge to the dock and there mooring it, and the obligation of the defendant then ceased, why it would be your duty to answer the first issue `No.' (Because if Stone undertook simply to tow the barge down to the dock and there moor it, and his liability then ceased, why he would not be considered as having undertaken to transport and deliver these goods in the capacity of a common carrier, even if he were a common carrier at (296) the time.)"
To so much of the court's charge as appears in parenthesis above the plaintiff excepted.
And continued: "Of course, gentlemen, if it was the custom of the harbor that under a contract of this kind the liability and the *Page 317 
duty of the man who did the towing ceased as soon as he had moored the barge, it was the custom of the owner of the lumber to then put a watchman upon it, and he neglected to do that, that custom would ripen into law and, therefore, a duty devolving upon the plaintiff. But it is a question of fact for you whether you find from this evidence that such was a rule of the port under their agreement and under the contract."
The plaintiff excepted to the last charge upon the ground that there was no evidence to support it.
The jury returned the following verdict:
1. Was the defendant engaged in the business of a common carrier, and, as such, did the defendant undertake to transport and deliver the plaintiff's lumber to the Clyde Line Steamship Company, as alleged in the complaint? Answer: "No."
2. If so, did the defendant breach its contract of carriage and delivery? Answer: __________
3. Was the plaintiff's lumber, or any part thereof, lost by the negligence of the defendant, as alleged in the complaint? Answer: "No."
4. Did the plaintiff, by his own negligence, contribute to his loss and damage, as alleged in the answer? Answer: ________
Judgment was entered in favor of the defendant, and the plaintiff appealed.
There are two reasons for overruling the exceptions taken by the plaintiff to the refusal of the court to permit the witness Sears to answer the questions propounded to him:
The first is that the evidence offered had no bearing except on the issue of negligence, the determinative fact on that issue being as to the condition of the lighter when it was left at the dock of the Clyde Line on the evening of 9 October, and the witness knew nothing of the condition then but was proposing to express opinions based on what he saw on the morning of 10 October, without explanation as to the changes naturally brought about by the ebb and flow of the tide; and the second, that the plaintiff had the benefit of the evidence in answers to questions not objected to.
The purpose of the evidence was to show that the lighter was tied to the dock negligently, and that it would not have (297) dumped its load of lumber if it had been properly tied, and the witness testified without objection: "It appeared to me that it *Page 318 
had too much slack in the rope and the tide rising gave a chance for the lighter to swing around and one end caught under the dock." "If the lighter had been placed alongside of the piling it would be impossible for the lighter to dump its load."
We have here the fact testified to by the witness that the lighter was improperly tied, in that the rope was too slack, and his opinion that if it had been properly tied along the piling instead of with a slack rope it would not have dumped its load, which is the substance of the evidence excluded.
The evidence of the witness Register, which is the subject of exception, is objectionable because it proves nothing and furnishes the opportunity for mere surmise and conjecture, but this is a good reason for not making it a ground for a new trial unless we can see it was prejudicial, and as it appears to us it made more for the plaintiff than for the defendant.
It is true, counsel for the defendant could argue the possibility of the lines being changed during the night because lines had been changed on the dock in the past, but the earnest and skillful counsel for the plaintiff could, and doubtless did, meet this argument by showing the jury that the question was within itself an admission that the condition in which the lines were seen by Sears on the morning of the 10th was negligent, as otherwise there was no necessity for proving the possibility of a change in them the night before, and that all the evidence was that they had not been changed but were found the next morning as they were left the night before, as Sears testified the lines were too slack on the morning of the 10th, and Register, an employee of the defendant and his witness, testified that he assisted in tying the lighter on the evening of the 9th, and that the line had to be left slack on account of the rise and fall of the tide.
The instruction which his Honor refused to give was not directed to the first issue but related to the burden of proof based upon the defendant being found to be a common carrier, and is immaterial as the first issue was found in favor of the defendant.
The controversy on the first issue as presented in this record was one of fact, dependent upon the contract, and as such was fairly submitted to the jury, as shown in the part of the charge excepted to.
The last exception cannot be sustained as the witness Sears testified it was the custom for the owner to place a watchman (298) on the lighter when it was tied to the dock.
We find no reversible error.
No error. *Page 319